**JERSEY'S ALL–AMERICAN SPORTS BAR, INC., Plaintiff,**

v.

**WASHINGTON STATE LIQUOR CONTROL BOARD, et al., Defendants.**

**No. C98–1622C.**

United States District Court, W.D. Washington, at Seattle.

June 29, 1999.

David R. Osgood, Seattle, WA, for plaintiff.

Kim O'Neal, Barbara Herman, Wash State Liquor, Control Olympia, WA, Phillip E. Brenneman, Thomas S. Sheehan, City of Seattle, WA, for defendants.

## ORDER

COUGHENOUR, Chief Judge.

## INTRODUCTION

In this suit, the plaintiff challenges the constitutionality of Washington laws that require a business holding a liquor license to obtain permission from two government offices before the business may provide music or entertainment. The plaintiff has

filed a motion for summary judgment. The Washington State Liquor Control Board[1] has filed a cross motion for summary judgment. Having read and considered the papers filed by the parties and having heard oral argument on the motions, the Court finds and rules as follows.

## ANALYSIS

### 1. Background

Summary judgment is appropriate when there are no disputed issues of material fact and one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the Court must consider the facts in the light most favorable to the non-moving party. The facial constitutional challenges raised by the plaintiff in this case are primarily questions of law and the Court is able to resolve these claims without relying on any factual matters that remain in dispute.

The plaintiff is challenging the constitutionality of three aspects of the process for licensing entertainment at nightclubs in the city of Seattle. It brings this action pursuant to 42 U.S.C. § 1983 and 1988, alleging that the laws at issue violate the First and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1343(3).

The first provision challenged by the plaintiff is a statute which has been the law in Washington State since 1937. It is captioned "Permit for music and dancing upon licensed premises" and it reads:

It shall be unlawful for any person, firm or corporation holding any retailer's license to permit or allow upon the premises licensed any music, dancing, or entertainment whatsoever, unless and until permission thereto is specifically granted by appropriate license or permit of

the proper authorities of the city or town in which such licensed premises are situated, or the board of county commissioners, if the same be situated outside an incorporated city or town: *Provided,* That the words "music and entertainment," as herein used, shall not apply to radios or mechanical musical devices. R.C.W.A. 66.28.080 (West 1999).

The plaintiff's second challenge is to the city of Seattle's implementation of this statute. Since 1981, the city has had no published, formal procedure for the issuance of these entertainment licenses. Nevertheless, the city does require nightclub owners to obtain a letter of permission granting the club the right to present entertainment. Presently, the holder of a liquor license must seek this permission by sending a request to a civilian employee of the Seattle Police Department. There are no publicly available guidelines that this employee must use in making the decision, no time-line within which the permit will be granted or denied, and no clear method of appeal from a denial.

The plaintiff's third challenge is directed at the Washington State Liquor Control Board's assertion of parallel authority to grant or deny permission to a nightclub owner who wants to provide music or other entertainment. The Liquor Board's authority derives from a regulation that does not explicitly mention entertainment, but that requires the holder of a liquor license to seek permission in order to conduct any additional "business or activity" on the premises. W.A.C 314–16–180(1). Like the city of Seattle, the Liquor Board has no published standards or procedure for the issuance of these permits.

Although the parties agree that permission from both the city and from the Liquor Board is required for a Seattle nightclub owner to provide entertainment, the coordination between the two offices is

---

1. The Court recently granted the plaintiff's motion to amend its complaint to name officials of the Washington State Liquor Control Board in their official capacity. For the sake of clarity, the Court will refer to these defendants collectively as the Liquor Control Board.

only vaguely and informally defined. Until recently, an individual seeking a permit would address the request to the Liquor Board only, and the Liquor Board would then consult with the local city or county government. Within the past year the procedure was changed to require the prospective licensee to seek authorization from the city first, then, if permission is granted, provide a copy of the city's letter of permission to the Liquor Board which then makes its own decision.

Both of the defendants insist that the authority to license added activities at nightclubs is important to their efforts to maintain safe conditions in and around these establishments. They identify liquor and entertainment, particularly music, as a volatile combination. They have filed copies of police reports from violent incidents in and around several popular Seattle dance clubs as evidence of the need for this authority. There is no doubt that the dangers identified by the defendants are genuine, and protection against these dangers is at the at the very core of the state's traditional police power.

Jersey's All American Sports Bar, the plaintiff in this case, has been in business in downtown Seattle for almost ten years. Jersey's has had an admittedly contentious relationship with the city and the Liquor Board almost from the day it first opened its doors. Although the Liquor Board, apparently in consultation with the city, originally granted Jersey's a license for music and dancing, the license was revoked by the Liquor Board several years ago. Recently, the bar sought to again add music and dancing. The parties differ on the exact sequence of events that followed. Ultimately, however, Jersey's be-

gan featuring music and dancing without the permission of either the city or the Liquor Board, and the Liquor Board relied on this and other violations to revoke Jersey's liquor license. Jersey's challenged this decision, unsuccessfully, in Washington Administrative Proceedings [2] and has recently appealed the administrative ruling to King County Superior Court.

## 2. Abstention and Standing

The defendants ask that the Court defer ruling on the plaintiff's constitutional claims until after the Washington State courts have had the opportunity to consider these issues, and perhaps issue a ruling narrowing the statute. Because the plaintiff is currently challenging the Liquor Board's revocation of its license in King County Superior Court, the defendants argue that there is an alternative forum competent to address the plaintiff's constitutional claims, and that this Court should abstain pending resolution of the state court case.

■ Federal courts are generally obliged to exercise the jurisdiction which they have been granted. The narrow exceptions to this rule allow a federal court to postpone resolution of a constitutional challenge to a state law if that law is ambiguous and might be preserved by a conservative construction imposed by the state court. This is not such a case. Neither of the defendants has proposed an interpretation of these laws that satisfies the requirements of the First Amendment, and the Court is not able to identify such an interpretation on its own.[3] Because the challenged procedures of the city and the Liquor Board are clearly unconstitutional, and the current law undoubtedly infringes

---

**2.** The Administrative Law Judge had no jurisdiction to review the constitutionality of the Liquor Board's decision.

**3.** The Court's analysis in this Order is based on the First Amendment to the United States Constitution and law interpreting that amendment as it has developed in the federal courts. The Court notes, however, that Washington

law accords an even greater level of protection to free speech. *See e.g. JJR Inc. v. City of Seattle,* 126 Wash.2d 1, 8, 891 P.2d 720 (1995) (striking down the city's licensing scheme for adult entertainment and noting that prior restraints of protected expression are *per se* violations of the Washington constitution).

the First Amendment rights of the plaintiff and others, there is no justification for postponing this Court's ruling on these issues.

Moreover, the city of Seattle is not a party to the plaintiff's state court case and thus the state court may not have jurisdiction to review the constitutionality of the Washington statute and the city's procedures implementing it. Finally, this is not a case involving a newly minted law which is yet to be tested and refined in practice. The statute at issue has been the law in Washington for over sixty years, and the informal procedures of the city and Liquor Board have been in force for almost twenty. Certainly that is ample time for the government to bring its procedures in line with the constitution. For these reasons, the defendants' request that the Court decline to exercise jurisdiction over this case is denied.

■ It is also clear that the plaintiff has standing to bring this facial challenge to the statute. At oral argument, the defendants suggested that the plaintiff's failure to apply for a permit could undercut its standing to challenge the permitting procedures. The Supreme Court has held otherwise. "[O]ur cases have long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 755–56, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). There is no dispute that the plaintiff's activities render it subject to the permitting scheme at issue. Indeed, the Liquor Board has revoked the plaintiff's liquor license as a result of its failure to obtain the proper entertainment permit. Thus, the Court finds that the plaintiff has standing to bring this facial challenge and proceeds to consider the merits of its claims.

*3. First Amendment Protections*

■ As an initial matter, the Court notes that the activities covered by the laws at issue in this case enjoy substantial First Amendment protection. The statute is drafted so broadly that it appears to sweep in even some political activity, such as a theatrical skit parodying government officials or a gathering to watch televised election returns, when that activity is conducted in an establishment licensed to sell alcohol. The authority asserted by the Liquor Board and the city of Seattle is, if anything, even broader. Certainly any law permitting interference with this type of political speech must withstand the strictest scrutiny under the First Amendment. In addition, the less explicitly political entertainment that appears to be the primary focus of these laws also receives substantial constitutional protection, as the Supreme Court made clear in a case addressing a First Amendment challenge to regulations governing rock concerts in New York's Central Park. *Ward v. Rock Against Racism,* 491 U.S. 781, 790, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

■ The plaintiff argues that the laws at issue must be struck down as impermissible prior restraints on First Amendment protected expression. A prior restraint is a law giving public officials the power to deny the use of a forum in advance of actual expression. *Southeastern Promotions Ltd. v. Conrad,* 420 U.S. 546, 553, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). The threat to free speech posed by such laws is severe, and they can only survive constitutional challenge by a demonstration that they include rigorous procedural safeguards against improper official censorship.

The defendants resist the characterization as a prior restraint on several grounds. First, they insist that the statute and Liquor Board policy are not prohibitions on speech. They emphasize that licenses are almost never denied, suggesting that the burden on speech is, as a

practical matter, minimal. They also argue that the Court should focus on the goal of the legislation. Because the defendants identify a goal that is unrelated to the suppression of speech or ideas—maintaining safe conditions in and around premises licensed to sell alcohol—they urge the Court to find that the laws at issue here do not regulate speech.

■ The defendants' arguments are not persuasive. The statute reads: "It shall be unlawful for any person, firm or corporation holding any retailer's license to permit or allow upon the premises licensed any music, dancing, or entertainment whatsoever, unless and until permission thereto is specifically granted by appropriate license or permit ..." R.C.W. 66.28.080. It is hard to conceive of a more blatant prior restraint on speech. The defendants ask the Court to simply ignore the means chosen by the state to advance its interest. But the Court may not limit its inquiry to the government's asserted goals when the means employed directly infringe rights protected by the constitution. Because the state has decided to regulate health and safety via a license to speak, that license must meet the requirements of the First Amendment.

■ The assertion that the city and Liquor Board almost never deny a request for a license does not eliminate the need for First Amendment scrutiny. The United States Supreme Court has emphasized that the impact of a prior restraint extends beyond the individuals who have been denied a license. "[T]he mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). In other words, an unfettered prior restraint itself burdens speech, and the Court does not need to find that licenses have been improperly

denied to find that such a prior restraint violates the First Amendment.

■ Finally, the defendants argue that the entertainment permit is not a prior restraint because the government is not prohibiting unlicenced entertainment in every venue, only in those serving alcohol. Thus, the defendants suggest, the scheme is better analyzed under the less stringent requirements for a time, place, and manner regulation. The availability of an alternative forum, however, does not save a licensing scheme from having to meet the constitutional requirements for a prior restraint. *See e.g., City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (striking down a city ordinance requiring a permit to place newspaper boxes on city sidewalks as a prior restraint despite the availability of alternate means to distribute newspapers); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 555, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975) (holding that denial of municipal auditorium for production of the musical "Hair" was an invalid prior restraint and noting that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.") (internal citation omitted).

■ These cases make it clear that prior restraint analysis is triggered by the existence of official discretion to deny the use of a given forum for First Amendment protected activity. The power of censorship inherent in such discretion is the central concern of most prior restraint cases, and the threat that this power might be abused is sufficient to invoke the requirements for a prior restraint. The time, place, and manner cases cited by the defendants, on the other hand, all involve *blanket* prohibitions, not the discretionary power to license speech. *See e.g., City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (upholding a zoning ordinance barring adult businesses from certain areas); *Ward v. Rock Against Racism*, 491 U.S.

781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (upholding noise level and sound mix requirements applied to all concerts in New York's Central Park). Because of the defendants in this case assert the power to issue or to deny licenses to engage in First Amendment protected activity, the permits at issue must meet the constitutional requirements for prior restraints.

### 4. Requirements for a Prior Restraint.

 "While prior restraints are not unconstitutional *per se,* any system of prior restraint comes to this Court bearing a heavy presumption against its constitutional validity." *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 225, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (internal punctuation and citations omitted). The government can only overcome this presumption by demonstrating that the prior restraint includes procedural safeguards designed to protect against abuse of the power to censor. In particular, a licensing scheme must not grant officials the unbridled discretion to deny a permit to speak, and it must include definite and reasonable limits on the time within which the license will be issued or denied. *Id.* at 225–26, 110 S.Ct. 596. To avoid a finding that a statute grants unbridled discretion, the government must show that it includes narrow, objective, and definite standards for the granting or denial of the license. *Shuttlesworth v. Birmingham,* 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). These guidelines must be sufficient for a court to conduct a meaningful review of the decision and readily determine whether or not a denial was based on legitimate grounds. *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 758, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). The deadline requirement .is directed at the same concern. The power to postpone issuance of a license indefinitely is effectively the power to censor. Thus, insisting on a definite time-line is also forecloses the possibility of unreviewable official censorship. *FW/PBS, Inc. v. City of Dallas,* 493

U.S. 215, 228, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

 In this case the government has made no showing that any of the three legal schemes challenged by the plaintiff include these procedural requirements. R.C.W. 66.28.080 is a stark grant of unrestrained official power to license speech. The statute includes no standards that a city or county must apply in issuing entertainment licenses, and no time frame for the issuance of the license. Thus, it clearly fails to meet the constitutional requirements for a prior restraint.

 The procedures employed by the city of Seattle and Liquor Board are, if possible, even less defensible. Not only do the entertainment licensing procedures lack any published guidelines or deadlines, the very fact that the Seattle Police Department and the Liquor Board issue such licenses is not clearly stated in any statute, regulation, or ordinance. In place of guidelines, the defendants ask the Court to accept their assertion that the entertainment permits are only used to monitor public safety issues, and not to censor any particular type of expression or point of view. This assumption that unbridled discretion to license speech will only be exercised to further legitimate public health and safety interests "is the very presumption that the doctrine forbidding unbridled discretion disallows." *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 770, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). The health and safety concerns put forward by the defendants are certainly important government interests; however, prior restraints which lack procedural safeguards are unconstitutional regardless of the importance of the government interest at stake.

The defendants in this case have failed to meet their burden of demonstrating that the prior restraint schemes at issue include sufficient procedural protections to withstand the plaintiff's constitutional challenge. Accordingly, the Court finds that

R.C.W. 66.28.080, the city of Seattle's current informal entertainment licensing procedure, and the Washington State Liquor Board's entertainment licensing procedure, are all unconstitutional prior restraints.[4] The defendants and their successors are permanently enjoined from enforcing R.C.W. 66.28.080 as it is presently drafted. The city of Seattle is permanently enjoined from enforcing is present procedure for issuing licenses granting permission for holders of liquor licenses to engage in First Amendment protected activity. The Washington State Liquor Board defendants and their successors are permanently enjoined from enforcing W.A.C 314–16–180(1) as against First Amendment protected activity.

This injunction is not intended to interfere with the city or state's enforcement of laws regulating sales of liquor, fire codes, noise ordinances, laws prohibiting violence against persons or property, or other health and safety regulations. What the government may not do is attempt to monitor or enforce these laws through the issuance of an entertainment permit if the scheme governing issuance of such permits lacks the procedural requirements for prior restraints. This Order also does not address the constitutionality of such a licensing scheme if the scheme had additional procedural safeguards in place.[5] Because the plaintiff's challenge to the law as an invalid prior restraint is sufficient to dispose of the issues in this case, the Court

does not reach the plaintiff's challenges on grounds of vagueness and overbreadth.

## CONCLUSION

The Court GRANTS the plaintiff's motion for summary judgment and DENIES the defendant's cross-motion for summary judgment.

SO ORDERED.

---

4. These findings are in accord with the conclusions of other courts that have considered the constitutionality of similar licensing schemes also lacking procedural safeguards. *3570 East Foothill Blvd., Inc. v. City of Pasadena,* 912 F.Supp. 1268 (C.D.Cal.1996); *Venuti v. Riordan,* 521 F.Supp. 1027 (D.Mass. 1981).

5. There appear to be surprisingly few cases addressing the constitutionality of this type of licensing scheme. The parties cite several cases involving nude dancing, but the Supreme Court has indicated that the state has an increased power to regulate indecent or lewd performances because of the threat to

public morals posed by such performances. *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). Prior restraint licensing of all entertainment raises a much more substantial threat to core First Amendment values. Several cases have found such schemes unconstitutional prior restraints when the schemes lacked the required procedural safeguards. *See* cases cited in footnote 4, above. At least one court found a similar licensing scheme unconstitutional without considering the procedural protections provided. *Dawson v. Village of Spring Valley,* 151 Misc.2d 128, 572 N.Y.S.2d 1000 (1991).