# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

CITY OF SEATTLE, )
                                        )   No. 66852-8-I
            Respondent,                 )
                                        )   ORDER GRANTING MOTION
        v.                              )   TO PUBLISH
                                        )
ROBERT D. DAVIS and ASF, Inc.,          )
                                        )
_____Appellants._____)

The respondent, City of Seattle, has filed a motion to publish herein.  The court

has taken the matter under consideration and has determined that the motion should be

granted.

Now, therefore, it is hereby

ORDERED that the motion to publish the opinion filed in the above-entitled

matter on December 3, 2012, is granted.  The opinion shall be published and printed in

the Washington Appellate Reports.

Done this 1st day of April, 2013.

FOR THE PANEL:

_____
Judge

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CITY OF SEATTLE, )
                                   )    No. 66852-8-I
         Respondent, )
                                     )    DIVISION ONE
    v.                              )
                                     )    PUBLISHED OPINION
ROBERT D. DAVIS and ASF, Inc., )
                                     )
         Appellants. )    FILED: December 3, 2012

GROSSE, J. — On a motion to enjoin operation of an adult cabaret for failure to comply with Seattle Municipal Code (SMC) 23.47A.004(H), which requires a buffer zone between adult cabarets and areas used by children, the trial court properly decided the injunction motion as a matter of law when the facts were undisputed that a business application for the adult cabaret was not submitted before the ordinance was passed.

## FACTS

On May 11, 2007, Robert Davis submitted an application to the City of Seattle's (City) Revenue and Consumer Affairs Department for a general business license for the business entity ASF, Inc., doing business as "Elegance Gentlemans Club." The physical business location listed on the application was "1534 First Ave. South, Seattle, WA 98134." On the application, the services to be rendered were described as "Adult Entertainment Club with Live Nude Dancers and Food Service." The application form contained a preprinted "Zoning Limitations" that stated: "A business license does not authorize the holder to conduct business in violation of any zoning ordinance."

On June 22, 2007, the City passed SMC 23.47A.004(H), also known as the "dispersion ordinance," which requires a buffer zone between adult cabarets and areas used by children. Specifically the ordinance provides:

H. Adult Cabarets.

1. Any lot line of property containing any proposed new or expanding adult cabaret must be 800 feet or more from any lot line of property on which any of the following uses has been established by permit or otherwise recognized as a legally established use: community center; child care center; school, elementary or secondary; or public parks and open space use.

2. Any lot line of property containing any proposed new or expanding adult cabaret must be 600 feet or more from any lot line of property for which a permit has been issued for any other adult cabaret.

3. The dispersion analysis required by subsections 23.47A.004.H.1 and 2 shall be based on the facts that exist on the earlier of:

a) the date a complete application for a building permit for an adult cabaret for the property proposed to contain the new or expanding adult cabaret is made, or

b) the date of publication of notice of the Director's decision on the Master Use Permit application to establish or expand an adult cabaret use, if the decision can be appealed to the Hearing Examiner, or the date of the Director's decision if no Hearing Examiner appeal is available.

On December 31, 2007, Davis submitted an "Application For Adult Entertainment Premise License" for "Elegance Gentlemans Club," and listed the business address as "5220 Roosevelt Way NE, Seattle, WA 98105." On January 9, 2008, Davis submitted a "Supplemental Application—Adult Entertainment Premise" for this same club. The application described entertainment provided as "Adult Entertainment. Live nude dancers on stage," and stated that the applicant agreed to comply with "all laws and other legal requirements, including . . . building, land-use, health and firecodes."

2

In February 2008, Davis applied for an adult entertainment premises license for another proposed strip club on Aurora Avenue North. In response, the City's Department of Planning and Development (DPD) informed him that under the new licensing ordinance his license would not be approved until he submitted building permit applications and plans to DPD for determination of compliance with zoning and building regulations.

On November 4, 2008, Davis paid the license fee for the 2007 Adult Entertainment Premise License for the Roosevelt club and the City issued a 2007 "Business License" for "Elegance Gentlemans Club" located at 5220 Roosevelt Way N.E. Davis renewed this business license in 2008, 2009, and 2010. In 2010, Davis planned to finally open the Roosevelt club under the name "Jiggles."

In November 2010, the City received several complaints about a strip club opening on Roosevelt Way that was located near schools, child care facilities, and community centers. On November 12, 2010, DPD sent a letter to Davis informing him that if he intended to open a strip club at the Roosevelt location, he needed to obtain a master use permit to establish an adult cabaret zoning use. The City also notified Davis that a strip club would likely not meet the zoning buffer requirements of the dispersion ordinance, but that final regulatory determination of compliance would not occur until DPD received and reviewed a master use permit application.

On November 29, 2010, Davis responded that the City's issuance of the 2007 license for the Roosevelt club deemed the club in compliance with zoning requirements in existence before the dispersion ordinance was passed and that he was not required to submit a master use permit before opening the club. On

December 16, 2010, Davis opened Jiggles without applying for or obtaining a master use permit.

The City then sought to enjoin the operation of Jiggles and filed a motion for a preliminary injunction. The City also filed a motion to consolidate a hearing on the merits of its motion with the hearing on its motion for a preliminary injunction. The trial court consolidated the hearings, granted the City's motions, and ordered a permanent injunction. Davis appeals.

## ANALYSIS

Davis first contends that the trial court erred by deciding the injunction motion as a matter of law because there were issues of material fact about whether the cabaret dispersion ordinance applied to the operation of Jiggles. Thus, he contends, the trial court should have allowed him to proceed to trial on the merits. We disagree.

CR 65(a)(2) allows the trial court to consolidate a hearing on a preliminary injunction with a trial on the merits.[1] When the essential facts are not in dispute and the only issue on the merits is an issue of law, the trial court necessarily decides the merits of the case when it decides whether there is a likelihood that the plaintiff will prevail on the merits.[2]

Davis contends that there were disputed facts about whether he applied for a business license for Jiggles before the dispersion ordinance was passed and that this was relevant to the issues of whether he had a vested right to

---

[1] "Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application."

[2] Rabon v. City of Seattle, 84 Wn. App. 296, 300, 932 P.2d 646 (1996), reversed on other grounds by 135 Wn.2d 278, 957 P.2d 621 (1998).

4

operate an adult cabaret at that location without being subject to the dispersion ordinance requirements and whether the City is estopped from asserting that it never determined zoning compliance when it issued the 2007 license. Davis asserts that he applied for an adult entertainment license for Jiggles in May 2007 and that he therefore had a vested right in the regulations in effect at that time, which did not include the buffer requirements of the dispersion ordinance. Rather, he asserts, the regulations at that time required the City to determine zoning compliance before issuing the license and because the City issued the 2007 license without applying the buffer requirements, it had deemed the club in compliance with zoning regulations. Thus, he contends, the City could not now go back and require him to comply with the buffer requirements.

The record does not support Davis' factual assertions. The May 2007 application to which he cites is simply a general business license for "Elegance Gentlemans Club," and lists the physical business location as "1534 First Ave. South, Seattle, WA 98134," not the Roosevelt location. The record shows that he did not submit the adult entertainment license application for the Roosevelt location until December 2007, after the passage of the ordinance. Thus, there were no disputed facts about when he applied for the adult entertainment license and the trial court did not err by deciding the issue as a matter of law.

Even if there were disputed facts about when he applied for the license, the timing of this application is not material to the vesting claim. Under SMC 23.76.026, a person acquires vested rights against the application of new zoning regulations only by filing a building permit application or on the issuance of a master use permit. The record is clear that he did not file a building permit

5

application and was not issued a master use permit before passage of the ordinance. At most, he filed an application for a general business license or an adult entertainment premises license, which does not trigger such vesting.

Nor is the timing of the license application material to the estoppel claim. Even if he applied for the license for the Roosevelt club in May 2007, this does not establish that the City in fact determined zoning compliance at that time. The record shows that the City did not issue the license until November 2008, well after the enactment of the dispersion ordinance and after it had already notified Davis on his other application that zoning compliance would only be determined upon application of a master use permit.

Davis next claims that the City should have been estopped from arguing that it did not conduct zoning compliance when it issued the 2007 license. The elements of equitable estoppel are "(1) [a]n admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement or act; and (3) injury to such other party from allowing the first party to contradict or repudiate such admission, statement, or act."[3]

Davis contends that because in May 2007 the City's licensing ordinance required the City to determine if a proposed strip club complied with zoning and other regulatory requirements before issuing an adult entertainment license and the City issued him an adult entertainment premise license for 2007, the City must have necessarily determined that his club complied with those laws.[4] Thus,

---

[3] Finch v. Matthews, 74 Wn.2d 161, 171 n.3, 443 P.2d 833 (1968) (citing Bignold v. King Cnty., 65 Wn.2d 817, 823, 399 P.2d 611 (1965)).

[4] He refers to former SMC 6.270.090(A)(1) (2007), which provides in part:

he argues, the City should now be estopped from arguing that it did not make that determination and that he was still required to obtain a master use permit to establish an adult cabaret zoning use for his club.

We first address the City's contention that Davis has failed to preserve this issue for appeal. As Davis points out, the City in fact raised the estoppel issue below contending, "[t]he City is not estopped from enforcing the zoning ordinance, [b]uilding [c]ode, or other laws."[5] In response, Davis contended, "The fact that the license was issued is a confirmation that ASF is in compliance with applicable zoning laws." This is the same assertion he makes in his collateral estoppel argument on appeal. Accordingly, the issue has been sufficiently preserved for review.

Nonetheless, the argument lacks merit. First, the factual assertions are not supported by the record. As noted above, the only license applied for in May 2007 was the general business license for a location other than the Roosevelt location and the application for the adult entertainment license for the Roosevelt business location was not submitted until December 2007, after the dispersion ordinance became effective. Thus, the regulations in effect at the time of the application included the buffer requirements of the dispersion ordinance, with which he was required to comply.

---

After an investigation, the Director shall issue the applicable license or licenses authorized by this chapter if the Director finds:

1.    That the business for which a license is required herein will be conducted in a building, structure and location which complies with the requirements and meets the standards of the applicable health, zoning, building, fire and safety laws of the State, the ordinances of the City, as well as the requirements of this chapter.

[5] (Emphasis omitted.)

7

Nor does Davis present facts showing that the City in fact determined that the Roosevelt business complied with zoning regulations when it issued the 2007 license. Indeed, the business license application form itself expressly states: "A business license does not authorize the holder to conduct business in violation of any zoning ordinance." Thus, this demonstrates that the City did not take the position that issuance of a business license automatically determines zoning compliance and does not support Davis' assertion to the contrary.

Additionally, as discussed above, the City did not issue that license until after it had already notified Davis on his other application that he had to submit a master use permit application before the City would make a zoning compliance determination. As the trial court found, Davis was on "direct notice" when he applied for an additional license that a master use permit application was required for the City to determine compliance with zoning requirements and that issuance of an adult entertainment license does not automatically establish zoning compliance. As the court states in its findings of fact:

10. Beginning as early as April 2008, the defendants were on direct notice that the City requires an application and plans for a development permit to be submitted to the City in order to trigger a regulatory decision that a proposed use complies with the zoning and building code requirements, including a decision whether a proposed adult cabaret complies with the zoning buffer requirements of SMC 23.47A.004(H) and the necessity of obtaining a Master Use Permit before establishing a new use of property.

11. Beginning as early as August 25, 2008, the defendants were on direct notice of the City's position that issuance of an adult entertainment premises license by the City does not obviate the need to obtain zoning permits, building permits, or other regulatory approvals required by law, or to conform to the substantive requirements of City ordinances or State law.

8

Because Davis does not assign error to these findings, they are verities on appeal. And while he contends that notice in 2008 is irrelevant to issuance of the 2007 license, the record indicates that the 2007 license was in fact not issued until November 2008. Thus, he was on notice that he had to submit a master use permit application before the City would make a zoning compliance determination. Davis therefore fails to establish that the City asserted inconsistent positions about the effect of license issuance on zoning compliance. Accordingly, he fails to establish a necessary element of equitable estoppel and the claim is without basis.

Finally, Davis challenges the constitutionality of SMC 23.47A.004(H), contending that the default time limit of 120 days to make a zoning decision is not a "reasonably brief" time limit and imposes an impermissible prior restraint on his free speech rights. The dispersion ordinance itself does not address the time limit for making a decision on compliance with the dispersion criteria. The 120-day time limit comes from RCW 36.70B.080(1), which provides:

> Development regulations adopted pursuant to RCW 36.70A.040 must establish and implement time periods for local government actions for each type of project permit application and provide timely and predictable procedures to determine whether a completed project permit application meets the requirements of those development regulations. The time periods for local government actions for each type of complete project permit application or project type should not exceed one hundred twenty days, unless the local government makes written findings that a specified amount of additional time is needed to process specific complete project permit applications or project types.

To implement the permit processing deadlines required by this statute, the City adopted SMC 23.76.005 which provides for a 120-day time limit for a Type I land

9

use decision (which includes change of use to allow operation of an adult cabaret):

> Except as otherwise provided in this section or otherwise agreed to by the applicant, land use decisions on applications shall be made within one hundred twenty (120) days after the applicant has been notified that the application is complete. In determining the number of days that have elapsed after the notification that the application is complete, the following periods shall be excluded:
> 1. All periods of time during which the applicant has been requested by the Director to correct plans, perform required studies, or provide additional required information, until the determination that the request has been satisfied;
> 2. Any extension of time mutually agreed upon by the Director and the applicant;
> 3. For projects which an environmental impact statement (EIS) has been required, the EIS process time period; and
> 4. Any time period for filing an appeal of the land use decision to the Hearing Examiner, and the time period to consider and decide the appeal.[6]

The right to open and operate an adult cabaret is protected speech under the First Amendment.[7] Cities may impose time, place, and manner restrictions on such speech to "combat the undesirable secondary effects" of adult businesses, but certain procedural safeguards must be in place to ensure that the government does not have unbridled discretion to suppress the protected speech.[8] Licensing schemes that fail to place limits on the time within which the decision maker must issue the license have been held impermissible because they create the possibility of suppression of speech through delay.[9] The burden

---

[6] Former SMC 23.76.005(A) (2007).

[7] Young v. City of Simi Valley, 216 F.3d 807, 815 (9th Cir. 2000).

[8] City of Renton v. Playtime Theatres, Inc., 475 U.S, 41, 49, 106 S. Ct. 925, 89 L. Ed. 2d 29 (1986); Jersey's All-American Sports Bar, Inc. v. Wash. State Liquor Control Bd., 55 F. Supp. 2d 1131, 1138 (W.D. Wash. 1999).

[9] FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 227, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990).

10

is on the government to explain the time period it needs to decide whether to grant or deny a license.[10]

In FW/PBS Inc., a licensing scheme that provided for a 30-day period within which to issue licenses after receipt of an application and after premises inspection and approval was held unconstitutional because there was no time limit for completing the inspections.[11] The licensees were motel owners who were deemed operators of a sexually oriented business and therefore subject to certain licensing requirements because they rented motel rooms for less than 10 hours.[12] The court concluded that because a license approval could be postponed indefinitely by delaying the inspection process, the licensing scheme gave unbridled discretion to the licensor and was an unconstitutional prior restraint on the licensee's First Amendment rights.[13]

In Fantasyland Video, Inc. v. County of San Diego (County), an adult entertainment permit application process was held unconstitutional where it allowed 130 days for the County to make a licensing decision.[14] There, the permit issuance was "conditioned solely on a finding of compliance with the nondiscretionary criteria, i.e., the distance and separation from specified land uses," and the County failed to present evidence why it needed so much time to complete this process.[15] The court concluded that the County failed to establish that the time period was reasonable, noting that "[c]ompliance with the distance and separation requirements, the only factor in the permit decision, can be

---

[10] Kev, Inc. v. Kitsap County, 793 F.2d 1053, 1060 (9th Cir. 1986).
[11] 493 U.S. at 227.
[12] 493 U.S. at 220.
[13] 493 U.S. at 227-29.
[14] 373 F. Supp. 2d 1094 (S.D. Cal. 2005).
[15] 373 F. Supp. 2d at 1144-45.

11

quickly verified through the County's GIS [(Geographic Information System)], which measures the distance between two points."[16] The court further noted that there was another occasion when the County made a final determination on such an application only nine days after it was received for processing.[17]

But in Redner v. Dean, an ordinance that placed a 45-day time limit on a decision to grant or deny an application by an adult entertainment business was held to be constitutionally reasonable when that time period was necessary for the government to determine compliance with building, fire, health, and zoning regulations.[18] Similarly, in TK's Video, Inc. v. Denton County, Tex., the court held that a 60-day period to approve licenses was constitutional where approval process involved application review, background checks, and policing design, layout, and zoning arrangements.[19] Thus, the reasonableness of a time limit depends on the number and type of decisions that must be made in order to grant or deny an application.

Here, the trial court concluded that the 120-day time limit was reasonable:

> SMC 23.76.005, by implementing the 120-day permit processing deadline prescribed by RCW 36.70B.080(1), is a content-neutral law of general applicability that contains a reasonable time period for reviewing development project proposals, including analysis of compliance with the zoning buffer requirement applicable to proposed new strip clubs under SMC 23.47A.004(H). Therefore SMC 23.76.005 is not an unconstitutional prior restraint under the First Amendment.

This conclusion was based on the following findings:

> The time required for the City to review proposed development projects varies greatly based upon the nature and scale of the

---

[16] 373 F. Supp. 2d at 1146.
[17] 373 F. Supp. 2d at 1146.
[18] 29 F.3d 1495, 1497-98 (11th Cir. 1994).
[19] 24 F.3d 705, 708 (5th Cir. 1994).

proposed project, and the scope and complexity of the various laws and regulations applicable to the proposed projects. This is true of development projects that enjoy First Amendment stature, including proposed strip clubs. Regulatory review of proposed development projects, including proposed strip clubs, may reasonably require 120 days, including the time required to analyze compliance with the zoning buffer requirement applicable to proposed new strip clubs under SMC 23.47A.004(H).

These findings are supported by the record. As the City noted, the 120-day project review time period applies generally to all proposed development projects in Seattle and could potentially encompass compliance determinations for numerous development standards contained in the City codes, including the land use and building codes. Thus, if the project is large and complex such as construction of a skyscraper, regulatory review is unlikely to be completed in 120 days whereas this amount of time might suffice for a smaller scale project. Indeed, the City provided declarations showing that it took anywhere from 14 to 24 months to issue zoning and building permits for various proposed projects that also involved First Amendment uses. The City also provided declarations showing that permitting for another strip club took six months.

Additionally, the City also provided documentation of the permitting process for another adult cabaret (Dreamgirls club) showing the complexity of the regulatory analysis involved. This documentation consisted of over 100 pages of paperwork, including detailed inspection reports for electrical permits, construction permits, structural calculations, mechanical permits, conveyance permits, side sewer permits, fire code compliance, billboard permitting, and a geotechnical engineering study.

This is unlike the permit processing time deemed unreasonable in Fantasyland Video, where the permit issuance was conditioned solely on a

13

finding of compliance with nondiscretionary criteria and the government failed to present any evidence why it needed so much time to complete this process.[20] In that case, the court found significant that the only factor in the permit process was determining compliance with distance and separation requirements which could have been quickly verified by the County's computer system. But here, the City presented evidence that it cannot rely solely on computer research to conduct its analysis, but must also conduct a time consuming search of microfilm records. According to the Land Use Planner-Supervisor for DPD, a definitive dispersion analysis for an adult cabaret requires examining legally established uses of hundreds of parcels, and this case involved examination of 386 parcels.

Davis further argues that by allowing the Director to extend the time limit if the Director needs more information, SMC 23.76.005 gives the Director unbridled discretion to delay a decision indefinitely. But as the City points out, there are checks on this discretion provided by statute and ordinance that prevent an indefinite delay of a decision. Under RCW 36.70B.080(1), the City may not make exceptions to the general 120-day requirement unless it makes "written findings that a specified amount of additional time is needed to process specific complete project permit applications or project types." And under RCW 36.70B.070, a local government must provide a written determination within 28 days that an application is complete, or if incomplete, a statement of what is necessary to

---

[20] See also BJS No. 2, Inc., v. City of Troy, Ohio, 87 F. Supp. 2d 800 (S.D. Ohio 1999)(120-day review period for a conditional use permit for adult uses unreasonable when the only review standard was a general and subjective question of whether the proposed use was compatible with surrounding properties); 11126 Baltimore Blvd., Inc. v. Prince George's County, Md., 58 F.3d 988, 998 (4th Cir. 1995) (150-day delay to complete zoning process unreasonable where "the record [was] devoid of any evidence" to support the delay).

14

complete the application. Additionally, within 14 days of the submission of the additional information, the government must notify the applicant that the application is complete or indicate additional information that is necessary for completion.[21] SMC 23.76.010 also specifies the requirements for complete applications and once the requirements are met, the application is deemed complete even if further information is requested.[22] Thus, the government's ability to delay permit processing is sufficiently curtailed by these limits on the time it has to determine if an application is complete.

We affirm.

WE CONCUR:

---

[21] RCW 36.70B.070(4)(b).
[22] SMC 23.76.010(D),(E).