# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SEIU HEALTHCARE 775NW, a labor organization, | No. 46797-6-II |
| Appellant/Cross-Respondent, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | PUBLISHED OPINION |
| Respondent, | |
| and | |
| FREEDOM FOUNDATION, | |
| Respondent/Cross-Appellant. | |

MAXA, J. — The Freedom Foundation (the Foundation) submitted a Public Records Act (PRA)[1] request to the Department of Social and Health Services (DSHS) seeking disclosure of lists of Washington individual home care providers (individual providers) who provide personal care services to functionally disabled persons. The Foundation's stated purpose in requesting the records was to attempt to correspond with the individual providers and notify them of their constitutional right to refrain from union membership and fee payments.

---

[1] Ch. 42.56 RCW.

No. 46797-6-II

SEIU Healthcare 775 NW (SEIU), the labor union representative of individual providers, obtained a temporary restraining order (TRO) and requested a preliminary injunction enjoining DSHS from releasing the lists of individual providers under the commercial purposes prohibition of RCW 42.56.070(9). SEIU also asserted that the exemption for personal information of welfare recipients in RCW 42.56.230(1) applied because the Foundation could use the lists to discover the identities of the Medicaid beneficiaries who received care from the individual providers. The trial court consolidated the preliminary injunction hearing with a permanent injunction trial and refused to enjoin disclosure of the lists, ruling that SEIU had failed to establish that either the prohibition or the exemption applied. SEIU appeals.[2]

We hold that (1) the trial court did not err under CR 65(a)(2) in combining the preliminary injunction hearing with a permanent injunction trial on the merits, (2) RCW 42.56.070(9) does not preclude DSHS from disclosing the lists of individual providers because the Foundation did not request the lists for commercial purposes, and (3) RCW 42.56.230(1) does not preclude DSHS from disclosing the lists of individual providers because the lists are not personal information maintained in the files of welfare recipients. We also hold that the Foundation is not entitled to attorney fees for dissolving the TRO. Accordingly, we affirm the trial court's denial of SEIU's request for preliminary and permanent injunctive relief.

---

[2] The Foundation cross appeals, arguing that the trial court erred by ruling that SEIU has associational standing to challenge the disclosure of the lists of individual providers, granting SEIU's motion for a TRO, and requiring the Foundation to respond to discovery regarding its request. Because we affirm the trial court on other grounds, we do not address these issues.

FACTS

SEIU is a labor union and the exclusive bargaining representative of all individual providers in Washington. RCW 74.39A.240(3) defines "individual provider" as a person who has contracted with DSHS to provide personal care or respite care services to functionally disabled persons under a variety of programs, including Medicaid.

The Foundation is a Washington-based organization focused on various economic issues. One of the Foundation's central purposes is to educate public employees, including the individual providers, about their constitutional rights to drop their membership in and payment of fees to public sector unions. For example, the Foundation places targeted advertisements on social media to explain the rights of public sector union members.

*The Foundation's PRA Request*

On July 2, 2014, the Foundation submitted a PRA request to DSHS, which included a request for:

> 5. All documents, emails, memos or other forms of communication between DSHS and [SEIU] . . . for the time period [of] June 25th 2014 to July 2nd 2014.
>
> 6. The business/work contact information (including e-mail addresses) for all in-home care providers (individual providers) and translators (language access providers).

Clerk's Papers (CP) at 45-46.

DSHS determined that an exemption prevented disclosure of individual providers' contact information but that it was required to disclose the names of individual providers. DSHS identified two lists that were responsive to the PRA requests: one with the names of approximately 30,968 individual providers and one contained in an email exchange with the

names of 95 additional individual providers. DSHS could not identify an exemption that would preclude the disclosure of these lists.

DSHS notified SEIU of the Foundation's PRA request and informed SEIU that DSHS would release the records absent a court order. DSHS sent the Foundation a first installment of records responsive to the request that did not include the names of the individual providers. SEIU then notified DSHS that SEIU intended to seek an injunction prohibiting DSHS from releasing a second installment of records.

*Complaint and TRO*

On October 1, SEIU filed a complaint for declaratory and injunctive relief against DSHS and the Foundation requesting a preliminary and permanent injunction under RCW 42.56.540 prohibiting DSHS from releasing the lists of individual providers. SEIU then filed a motion for a TRO to prevent the release of the lists.

The trial court heard oral argument on the TRO motion on October 3. SEIU argued that a TRO was necessary because (1) disclosing the lists was prohibited under RCW 42.56.070(9)'s "commercial purposes" provision; and (2) releasing the identity of individual providers would violate RCW 42.56.230(1), which exempts from disclosure personal information regarding welfare recipients.[3]

The trial court granted SEIU's motion for a TRO, which enjoined DSHS from disclosing the list of individual providers requested by the Foundation until the matter could be heard at a

---

[3] SEIU also argued that the lists were exempt from disclosure under RCW 42.56.070(1) because the release of a list of providers posed an unreasonable invasion of personal privacy interests. The trial court ultimately rejected this argument and SEIU does not raise this issue on appeal. Therefore, we do not address it.

preliminary injunction hearing on October 16. The trial court also informed the parties that it was inclined to consolidate the preliminary injunction hearing with a permanent injunction hearing pursuant to CR 65, but that it would need to read the parties' briefing first.

*SEIU Discovery Requests*

SEIU notified the Foundation under CR 30(b)(6) of its intent to depose a person or persons from the Foundation with knowledge of several specific topics and filed a motion for leave to take the CR 30(b)(6) deposition on an expedited basis. SEIU also served the Foundation with two interrogatories and eight requests for production. The Foundation filed a motion for a protective order prohibiting SEIU's requested deposition and any other written discovery because the subjects listed by SEIU in its deposition notice and written discovery were beyond the scope of relevant issues.

The Foundation also submitted a declaration from Maxford Nelson, a policy analyst for the Foundation. His declaration stated that (1) "[t]he names of the individual providers on the requested public records will not be used for commercial purposes," (2) "Freedom Foundation will not attempt to solicit money or support from the individual providers," (3) "Freedom Foundation intends to use the list to educate individual providers about their constitutional rights," and (4) "Freedom Foundation does not seek these records on behalf of any other individual or entity." CP at 802-03.[4]

---

[4] Nelson also submitted a second declaration on October 10 addressing the discovery requests, and a third declaration on October 13 that repeated the statements in his first declaration and stated that the Foundation does not promote specific for-profit businesses in any particular industry, work on behalf of private commercial businesses, or promote them on its website.

No. 46797-6-II

On October 10, the trial court denied SEIU's request to take a CR 30(b)(6) deposition on an expedited basis and granted in part and denied in part the Foundation's motion for a protective order. Specifically, the trial court ruled that SEIU would not be permitted to take a CR 30(b)(6) deposition but that the Foundation would be required to provide written answers to the first three topics of the CR 30(b)(6) deposition notice. Those three topics were:

1. All use(s) Freedom Foundation intends to make of the list of Individual Providers it has requested from the Department of Social and Health Services, State of Washington ("DSHS") pursuant to Washington's Public Records Act, RCW 42.56.

2. The identity of any person on whose behalf Freedom Foundation has requested the list of Individual Providers from DSHS.

3. Contacts Freedom Foundation has initiated with any Individual Provider(s) since January 1, 2011, and the nature and content of all communications between the Freedom Foundation and Individual Providers, [. . .] limited to any efforts Freedom Foundation has made to solicit funds from Individual Providers.

CP at 89.

At the October 10 discovery hearing, the trial court again hinted that it was planning on consolidating the preliminary injunction hearing with a permanent injunction hearing.

The Foundation provided SEIU with its discovery responses on October 14. Regarding its intended use of the lists of individual providers, the Foundation's response stated: "Freedom Foundation will seek to correspond with the Individual Providers, notifying them of their constitutional right to refrain from union membership and fee payments pursuant to the U.S. Supreme Court decision in *Harris v. Quinn*."[5] CP at 232. The Foundation further stated that the correspondence would direct individual providers to a website containing information and forms

---

[5] ___ U.S. ___, 134 S. Ct. 2618, 189 L. Ed. 2d 620 (2014).

6

related to opting out of membership with SEIU, but no link to the Foundation's website. The response concluded, "This is the sole use to which the list of Individual Providers will be put by Freedom Foundation." CP at 233. Another response stated that the Foundation had not requested the list of individual providers on behalf of any other person or entity.[6]

The Foundation also submitted a fourth declaration from Nelson. Nelson stated that he had drafted a letter to be sent to individual providers notifying them of "their altered legal rights following the U.S. Supreme Court decision in *Harris v. Quinn*, specifically their rights to opt out of union membership and automatic paycheck deductions." CP at 243-44. Nelson also stated that the Foundation had set up a separate website to "provide information and guidance to those who wish to take advantage of their recently expounded constitutional right." CP at 244.

*Preliminary and Permanent Injunction Hearing*

At the beginning of the October 16 hearing, the trial court expressly informed the parties that under CR 65(a)(2) it was consolidating the preliminary injunction hearing with a permanent injunction hearing. After oral argument, the trial court issued an extensive oral ruling. It ruled in part that (1) RCW 42.56.070(9) did not prohibit disclosure of the lists of individual providers "even assuming the accuracy of the allegations by the SEIU as to the motivations of the Freedom Foundation and even assuming that further discovery would support the SEIU's allegations" because the intent of the requests was political, not commercial, Report of Proceedings (RP)

---

[6] A third response provided extensive information regarding actual contacts with individual providers and advertisements and mass communications that some individual providers may have received.

(Oct. 16, 2014) at 75; and (2) disclosure of the lists of individual providers was not exempt from disclosure under RCW 42.56.230(1).

Therefore, the trial court denied SEIU's motions for a preliminary and permanent injunction. However, the trial court found good cause to extend the current TRO until November 5 to allow SEIU to appeal its ruling.

*SEIU Appeal*

SEIU appealed the trial court's order denying a preliminary and permanent injunction to this court. The Foundation filed a cross-appeal directly with the Washington Supreme Court, which the Supreme Court transferred to this court. A commissioner of this court stayed the trial court's October 16 order and continued the trial court's TRO enjoining DSHS from fulfilling the Foundation's PRA request pending a decision by this court.

ANALYSIS

A.    LEGAL PRINCIPLES – PRA INJUNCTIONS

1.    PRA Disclosure

The PRA mandates the broad disclosure of public records. *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 431, 327 P.3d 600 (2013). Under RCW 42.56.070(1), a government agency must disclose public records upon request unless a specific exemption in the PRA applies or some other statute applies that exempts or prohibits disclosure of specific information or records. *Ameriquest Mortg. Co. v. Office of Att'y Gen.* (*Ameriquest II)*, 177 Wn.2d 467, 485-86, 300 P.3d 799 (2013). The party seeking to prevent disclosure bears the burden of establishing that an exemption applies. *Ameriquest II*, 177 Wn.2d at 486; *see* RCW 42.56.550(1).

RCW 42.56.030 expressly requires that the PRA be "liberally construed and its exemptions narrowly construed . . . to assure that the public interest will be fully protected." As a result, we must liberally construe the PRA in favor of disclosure. *West v. Port of Olympia*, 183 Wn. App. 306, 311, 333 P.3d 488 (2014). When evaluating a PRA claim, we also must "take into account the policy . . . that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others." RCW 42.56.550(3).

We review challenges to an agency action under the PRA de novo. RCW 42.56.550(3); *Resident Action Council*, 177 Wn.2d at 428. "Where the record consists only of affidavits, memoranda of law, and other documentary evidence, an appellate court stands in the same position as the trial court in reviewing agency action challenged under the PRA." *Robbins Geller Rudman & Dowd LLP v. Office of the Att'y Gen.*, 179 Wn. App. 711, 719-20, 328 P.3d 905 (2014).

2. Injunctions Under RCW 42.56.540

A party other than a government agency attempting to prevent the disclosure of public records under the PRA may seek an injunction under RCW 42.56.540. *Ameriquest II*, 177 Wn.2d at 487. RCW 42.56.540 provides:

> The examination of any specific public record may be enjoined if, upon motion and affidavit by an agency or its representative or a person who is named in the record or to whom the record specifically pertains, the superior court . . . finds that such examination would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions.

Under this statute, a non-governmental party must prove that (1) the record in question specifically pertains to that party, (2) an exemption applies, and (3) the disclosure would not be

in the public interest and would substantially and irreparably harm that party or a vital government function. *Ameriquest II*, 177 Wn.2d at 487.

In applying RCW 42.56.540, the trial court first determines whether a PRA exemption applies. *See Bainbridge Island Police Guild v. City of Puyallup*, 172 Wn.2d 398, 408, 259 P.3d 190 (2011). Only if an exemption applies does the trial court address whether an injunction is appropriate under the statutory requirements: whether disclosure would not be in the public interest and would substantially and irreparably damage a person or vital government functions. *See id.* at 408, 420.

We review injunctions issued under the PRA de novo. *Robbins Geller*, 179 Wn. App. at 720.

### 3. TRO/Preliminary Injunction

RCW 42.56.540 does not discuss the different stages of injunctive relief. In general, a party in a PRA case can obtain a TRO or a preliminary injunction before establishing a right to a permanent injunction. *See Nw. Gas Ass'n. v. Wash. Utils. & Transp. Comm'n.*, 141 Wn. App. 98, 113, 168 P.3d 443 (2007) (stating that the process generally progresses from temporary restraining order, to preliminary injunction, to permanent injunction). A TRO and a preliminary injunction both are designed to preserve the status quo until the trial court can conduct a full hearing on the merits. *Id.* at 115-16. At a preliminary injunction hearing, the trial court does not need to resolve the merits of the issues for permanent injunctive relief. *Id.* at 116. Instead, the trial court considers only the *likelihood* that the moving party ultimately will prevail at a trial on the merits. *Id.*

In the context of RCW 42.56.540, a party seeking a TRO or preliminary injunction to prevent the disclosure of certain records must show a likelihood that an exemption applies and that the disclosure would clearly not be in the public interest and would substantially and irreparably damage any person or vital government functions. *See Ameriquest II*, 177 Wn.2d at 487.

To obtain permanent injunctive relief, a party generally must establish three elements: (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) that the act complained of will result in actual and substantial injury. *Huff v. Wyman*, 184 Wn.2d 643, 651, 361 P.3d 727 (2015); *see also Nw. Gas Ass'n*, 141 Wn. App. at 115. It is unclear how these requirements relate to the injunction requirements of RCW 42.56.540, and no case has applied these general requirements in a RCW 42.56.540 case. However, the first two requirements for a permanent injunction relate to the existence of an exemption and the third requirement is consistent with a similar requirement in RCW 42.56.540.

B.     CONSOLIDATION UNDER CR 65(A)(2)

SEIU argues that the trial court erred by consolidating the preliminary injunction hearing with a trial on the merits for a permanent injunction under CR 65(a)(2) because (1) the trial court gave inadequate notice of the consolidation and (2) consolidation prevented SEIU from conducting full discovery on whether the Foundation made the request for the lists of individual providers for commercial purposes. We disagree.

1.     Legal Principles

In general, a trial court will not "adjudicate the ultimate rights in the case when addressing the propriety of a preliminary injunction." *Rabon v. City of Seattle*, 135 Wn.2d 278,

285, 957 P.2d 621 (1998).  However, CR 65(a)(2) provides that "[b]efore or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated" with the preliminary injunction hearing.

Washington law is unclear regarding the circumstances in which a trial court can consolidate a preliminary injunction hearing with a trial on the merits.  Division One of this court in *Rabon v. City of Seattle* noted that "where the essential facts are not in dispute and the only issue on the merits is an issue of law," the trial court necessarily decides the merits of the case when it determines whether a preliminary injunction is appropriate.  84 Wn. App. 296, 300-01, 932 P.2d 646 (1996), *rev'd on other grounds*, 135 Wn.2d 278, 957 P.2d 621 (1998).  Following this discussion, the court acknowledged CR 65(a)(2) in a footnote and stated: "We recommend consolidation in cases without issues of fact."  *Rabon*, 84 Wn. App. at 301 n.1.  Citing *Rabon*, Division One more recently has implied that consolidation is appropriate under CR 65(a)(2) when "the essential facts are not in dispute and the only issue on the merits is an issue of law." *City of Seattle v. Davis*, 174 Wn. App. 240, 245, 306 P.3d 961 (2012).  We adopt this standard for consolidation under CR 65(a)(2).

Washington law also is silent regarding the standard of review.  Neither party addresses this issue.  Because CR 65(a)(2) authorizes the trial court to consolidate without placing any limitations on the trial court's exercise of that authority, we adopt an abuse of discretion standard.

2.    Notice of Consolidation

In order to comply with CR 65(a)(2), the trial court must expressly state at the preliminary injunction hearing that it is consolidating that hearing with a trial on the merits. *Ameriquest Mortg. Co. v Att'y Gen. of Wash.* (*Ameriquest I*), 148 Wn. App. 145, 155, 199 P.3d 468 (2009).  In *Northwest Gas Association*, this court reversed a trial court's denial of a preliminary injunction under the PRA because the trial court failed to expressly inform the parties that it was consolidating the preliminary injunction hearing with a permanent injunction trial on the merits.  141 Wn. App. at 114-15.  This court made the same holding in *Ameriquest I* based on similar facts.  148 Wn. App. at 156.

However, this case is distinguishable from both of those cases.  At the October 3 TRO hearing, the trial court informed the parties that it might consolidate the preliminary injunction hearing with a permanent injunction trial.  At the October 10 discovery hearing, the trial court again hinted that it was planning on consolidating the preliminary injunction hearing with a permanent injunction hearing.  At the beginning of the October 16 preliminary injunction hearing, before the parties presented any argument, the trial court formally ordered the consolidation of the preliminary hearing with a permanent injunction trial on the merits.  RP (Oct. 16, 2014) at 6-7.

SEIU argues that the trial court erred because the trial court did not give the parties advance notice of its intent to consolidate.  However, the trial court's statements on October 3 and October 10 provided some notice that the injunction hearings might be consolidated.  The parties certainly were aware that consolidation was a strong possibility.

In addition, CR 65(a)(2) does not require *advance* notice that the trial court will be consolidating the injunction hearings. Instead, the rule states that the trial court can order consolidation "[b]efore *or after the commencement*" of the preliminary injunction hearing. CR 65(a)(2) (emphasis added). Here, at the beginning of the hearing on October 16 the trial court expressly informed the parties of its intent to consolidate the preliminary injunction and permanent injunction hearings.

We hold that the trial court provided adequate notice under CR 65(a)(2) when it consolidated the preliminary injunction and permanent injunction hearings.

3.    Decision to Consolidate

SEIU argues that the trial court erred in consolidating the preliminary injunction and permanent injunction hearings because that decision prevented SEIU from conducting full discovery on the key factual issue under RCW 42.56.070(9): whether the Foundation made its request for the lists of individual providers for commercial purposes. We disagree that the trial court abused its discretion.

First, SEIU had received the Foundation's responses to the discovery that the trial court allowed. SEIU argues that it should have been allowed to take the CR 30(b)(6) deposition and receive full responses to the written discovery it propounded. However, the trial court expressly stated that it would not allow the CR 30(b)(6) deposition and expressly limited SEIU's ability to propound discovery requests to three narrow topics. SEIU does not assign error to the trial court's discovery order, and therefore waives any challenge to the order.

The record shows that SEIU was provided with the Foundation's discovery on October 14. Therefore, by the time of the hearing no *permitted* SEIU discovery requests were outstanding.

Second, the injunction hearing focused on the Foundation's purpose in requesting the lists of individual providers. By the time of the hearing, the Foundation had submitted interrogatory answers and four declarations of Nelson addressing that purpose: to contact individual providers and inform them of their constitutional right to refrain from union membership and fee payments. The interrogatory answers and declarations were sufficient for the trial court to determine whether the commercial purposes prohibition of RCW 42.56.070(9) applied to the Foundation's request.

SEIU argues that it was deprived of the opportunity to fully explore the Foundation's discovery responses and declarations. However, in *Ameriquest II*, the Supreme Court held that the trial court did not abuse its discretion in ruling that the party challenging a PRA request was not entitled to any discovery when a declaration was detailed enough to provide the trial court with a sufficient basis for its decision. 177 Wn.2d at 494, 499-500.

Third, the trial court "resolved" any outstanding factual disputes by assuming the truth of SEIU's allegations. The trial court stated:

> [I]f I can analyze this "intent" as being outside the scope of the provision, even assuming the facts as alleged by the SEIU and even assuming that further discovery substantiate SEIU's view of the Freedom Foundation's "intent," then I believe I can make this call as [a] matter of law without the need for more discovery.

RP (Oct. 16, 2014) at 74. The trial court concluded:

> [E]ven assuming the accuracy of the allegations by the SEIU as to the motivations of the Freedom Foundation and even assuming that further discovery would support

15

the SEIU's allegations, I conclude that the "intent" of the Freedom Foundation in these requests was political, not commercial.

RP (Oct. 16, 2014) at 75.

Under the circumstances of this case, the trial court was faced with a preliminary injunction motion where the essential facts were not in dispute and the only issue on the merits was a legal question. As a result, we hold that the trial court did not abuse its discretion in consolidating the preliminary injunction hearing with a trial on the merits under CR 65(a)(2).

C.      RCW 42.56.070(9) – COMMERCIAL PURPOSES PROHIBITION

SEIU argues that RCW 42.56.070(9) prohibits DSHS from disclosing the lists of individual providers because the Foundation requested the lists for commercial purposes. The Foundation's stated purpose in requesting the lists was to attempt to correspond with the individual providers and notify them of their constitutional right to refrain from union membership and fee payments. We hold that this purpose is not a commercial purpose because it is not designed to generate revenue, and therefore that RCW 42.56.070(9) does not bar DSHS's disclosure of the lists of individual providers.

1.    Statutory Language

RCW 42.56.070(9) states:

This chapter shall not be construed as giving authority to any agency . . . to give, sell or provide access to lists of individuals requested for commercial purposes, and agencies . . . shall not do so unless specifically authorized or directed by law.

The plain statutory language clearly focuses on the reason the requesting party has requested the list of individuals. The requesting party must be seeking the disclosure of the list for "commercial purposes." RCW 42.56.070(9).

16

However, the PRA does not define "commercial purposes." And although the Attorney General's Office (AGO) has issued opinions attempting to define this term (discussed below), no Washington case has addressed this term or the application of RCW 42.56.070(9).

2. Construction of RCW 42.56.070(9)

Statutory interpretation is a matter of law that we review de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Id.* at 762. To determine legislative intent, we first look to the plain language of the statute. *Id.* We consider the language of the provision in question, the context of the statute in which the provision is found, and related statutes. *In re Adoption of T.A.W.*, 188 Wn. App. 799, 809, 354 P.3d 46 (2015). When the statute at issue or a related statute includes an applicable statement of purpose, we interpret statutory language in a manner consistent with that stated purpose. *Id.*

To discern the plain meaning of undefined statutory language, we give words their usual and ordinary meaning and interpret them in the context of the statute in which they appear. *AllianceOne Receivables Mgmt., Inc. v. Lewis*, 180 Wn.2d 389, 395-96, 325 P.3d 904 (2014). "We may use a dictionary to discern the plain meaning of an undefined statutory term." *Nissen v. Pierce County*, 183 Wn.2d 863, 881, 357 P.3d 45 (2015). If the plain meaning of a statute is unambiguous, we must apply that plain meaning as an expression of legislative intent without considering extrinsic sources. *Jametsky*, 179 Wn.2d at 762. We do not rewrite unambiguous statutory language under the guise of interpretation. *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006).

A preliminary issue here is whether RCW 42.56.070(9) should be narrowly or liberally construed. As discussed above, RCW 42.56.030 is clear that "exemptions" must be narrowly construed. The Foundation relies on this principle of construction in arguing for a narrow construction of RCW 42.56.070(9). SEIU argues that RCW 42.56.070(9) represents a "prohibition" rather than an "exemption," and therefore narrow construction is not appropriate.

The statutory language is somewhat unclear as to whether the commercial purposes provision constitutes an exemption. RCW 42.56.070(1) refers to the provision as an exemption, stating that all public records must be made available "unless the record falls within the specific exemptions of [subsection (9)] of this section, this chapter, or other statute which exempts or prohibits disclosure of specific information or records."[7] On the other hand, RCW 42.56.070(9) does not use exemption language, stating instead that the PRA "shall not be construed" as authorizing the release of lists of individuals requested for commercial purposes and that agencies "shall not do so unless specifically authorized or directed by law."

However, the distinction between an exemption and a prohibition largely is immaterial. RCW 42.56.070(1) does not distinguish between the two, referring to any other statute that "exempts or prohibits" disclosure. More significantly, RCW 42.56.030 does more than require the narrow construction of exemptions. That statute expressly states:

> The people insist on remaining informed so that they may maintain control over the instruments that they have created. *This chapter shall be liberally construed* and its exemptions narrowly construed to promote this public policy and to assure that the public interest will be fully protected.

---

[7] RCW 42.56.070(1) actually refers to "subsection (6)" rather than "subsection (9)", but subsection 6 was renumbered as subsection 7 in 1992 and as subsection 9 in 1995. LAWS OF 1995, ch. 341 § 1; LAWS OF 1992, ch. 139 § 3.

In other words, the entire PRA must be liberally construed in favor of access to public records.

We conclude that RCW 42.56.070(9) must be construed in favor of disclosure regardless of whether it states an exemption or prohibition. This principle of construction is consistent with the PRA's strong mandate for broad disclosure of public records. *See Resident Action Council*, 177 Wn.2d at 431.

### 3. Meaning of "Commercial Purposes"

#### a. Ordinary Meaning

As discussed above, "commercial purposes" is not defined in the PRA. Therefore, we look first to the dictionary definition of "commercial." *See Nissen*, 183 Wn.2d at 881.

The first dictionary definition of "commercial" is "of, in, or relating to commerce." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 456 (2002). One definition of "commerce" is "the exchange or buying and selling of commodities." *Id.* These definitions suggest that a "commercial purpose" involves some type of sale transaction.

The second dictionary definition of "commercial" is "from the point of view of profit: having profit as the primary aim." *Id.* This definition suggests that a "commercial purpose" involves the generation of financial gain. This definition is somewhat broader than the first, in that it may apply to business activities that do not involve the sale of a product or service.

In determining which definition the legislature intended, we consider two formal AGO opinions addressing the meaning and application of the prior statutes that were recodified as RCW 42.56.070(9). In a 1975 opinion, the AGO addressed several questions directed to application of the "commercial purposes" provision.[8] The AGO stated that the provision applies

---

[8] In 1975, the commercial purposes provision was codified in former RCW 42.17.260(5) (1975).

to a list of names when (1) the requesting person "intends to use it to contact or in some way personally affect the individuals identified on the list," and (2) "when the purpose of the contact would be to facilitate that person's commercial activities," 1975 Op. Att'y Gen. No. 15, at 10.

With regard to the term "commercial," the AGO stated that "it is possible to limit it so as to exclude business activities not involved in [the] buying and selling of goods. However, we believe that the word as here used was intended to cover a broader range of business activity." *Id*. at 9. The AGO stated that "a narrower definition of 'commercial' could lead to the granting of access to one type of business activity and not to another." *Id*. at 10. As a result, the AGO concluded that "commercial" should be broadly defined as "encompassing any 'profit expecting' business activity." The AGO stated that this definition includes the activities of any form of "business enterprise." *Id*.[9]

In 1998, the AGO issued an opinion addressing whether the "commercial purposes" provision[10] applied when a commercial firm's purpose in requesting a list was not to contact individuals for purposes of commercial solicitation, but to use the records for general business purposes. 1998 Op. Att'y Gen. No. 2. The AGO repeated the conclusion in AGO 1975 No. 15 that the word "commercial" broadly encompasses any profit expecting business activity. *Id.* The

---

[9] Using this definition, the AGO concluded that commercial purposes existed for the requests of lists in order to (1) facilitate the organization of a trade group, (2) identify individuals for the purpose of attempting to sell products or services, and (3) sell the list. 1975 Op. Att'y Gen. No. 15, at 11-14. The AGO concluded that commercial purposes did not exist for the requests of lists to (1) solicit membership in an antique car owners club organized as a non-profit organization, (2) identify registered owners of automobiles blocking emergency exit or no parking areas when the requester is a commercial entity, and (3) create statistics which are then sold. *Id*. at 12-14.

[10] In 1998, the commercial services provision was codified in former RCW 42.17.260(9)(1995).

AGO clarified that the term "commercial purpose" is not limited to situations in which individuals are directly contacted or personally affected.[11] *Id.*

No Washington court has adopted or even addressed these AGO opinions. But formal AGO opinions are entitled to weight and may be persuasive authority because (1) they represent the legal opinion of the legal adviser of state officers designated by article. III, section 21 of the Washington Constitution, (2) we presume that the legislature is aware of any formal AGO opinions issued and this court may treat a failure to amend the statute in response to the formal opinion as legislative acquiescence to the AGO opinion, and (3) when an opinion is issued close in time to the passage of the statute in question, "it may shed light on the intent of the legislature, keeping in mind, of course, that the attorney general is a member of a separate branch of government." *Five Corners Family Farmers v. State*, 173 Wn.2d 296, 308, 268 P.3d 892 (2011).

Here, the AGO is charged with advising state agencies on PRA issues, and it necessarily has developed some expertise in this area. In addition, the legislature has not amended the PRA in response to the 1975 and 1998 opinions discussed above. Therefore, we interpret "commercial purposes" consistent with these AGO opinions. Combining the second dictionary definition of "commercial" and the definition stated in the AGO opinions, a reasonable definition of "commercial purposes" in RCW 42.56.070(9) would include any business activity intended to generate profits.

---

[11] DSHS also addresses two other AGO opinions, which are less relevant to our construction of commercial purposes. *See* 1973 Op. Att'y Gen. No. 113, at 2 (addressing the question of what is a list of individuals); and 1975 Op. Att'y Gen. No. 38, at 3 (concluding that a welcome service requested a list for commercial purposes when it wanted to, in part, make new residents "aware of business commercial entities and their services in the area").

The Foundation and amici Allied Daily Newspapers of Washington and Washington Coalition for Open Government argue that this definition cannot apply to the Foundation because it is a nonprofit organization that does not generate profits. However, even a nonprofit organization can generate revenue. And the 1975 AGO opinion stated that the term "commercial" referred to any form of business enterprise. 1975 Op. Att'y Gen. No. 15, at 10. Therefore, we refine this definition to clarify that "commercial purposes" in RCW 42.56.070(9) includes a business activity by any form of business enterprise intended to generate revenue or financial benefit.

> b.    Direct vs. Indirect Profit Generation

The Foundation and amici argue that a request for a list constitutes a commercial purpose only if the requester intends to profit from the direct use of the list itself. In support of this interpretation, amici point out that newspapers should not be subject to RCW 42.56.070(9) simply because the newspaper's use of a list of individuals might indirectly generate revenue by selling more newspapers.

On the other hand, SEIU argues that "commercial purpose" must be interpreted to include indirect economic benefits to the requesting party. Here, SEIU argues that the Foundation has benefited in the following ways: (1) economically injuring SEIU, which "it apparently perceives as an economic competitor;" (2) increasing the Foundation's membership and funds; (3) decreasing SEIU's membership and funds; (4) assisting the "commercial businesses with which it is associated;" and (5) bringing "credit and attention to its own extreme political views."

The Foundation's position of requiring that a requestor intend to use the list for direct profit is more consistent with interpreting RCW 42.56.070(9) in a manner that favors disclosure.

If indirect benefits are considered, a wide range of requests might fall within the commercial purposes provision and the policy of full disclosure of public records would be thwarted. In addition, a comment in the 1975 AGO opinion supports the Foundation's position. The AGO stated: "Where the requester's potential commercial benefit is remote and ephemeral and there is a clear purpose other than commercial benefit, the statute does not prohibit supplying the information in list form."[12] 1975 Op. Att'y Gen. No. 15, at 13.

    4.    Identifying the Requester's Purpose

DSHS requests that we provide guidance regarding a government agency's obligation to determine whether a request for a list of individuals is for a commercial purpose. DSHS suggests that an agency's inquiry should be limited to the four corners of the request and the content of the records requested. We disagree that an agency's inquiry is so limited when the agency has some indication that the list might be used for commercial purposes.

RCW 42.56.070(9) expressly states that a government agency "shall not" provide access to lists of individuals requested for commercial purposes. This language impliedly places some burden on the agency to avoid disclosing lists of individuals to a party intending to use the list for commercial purposes.

---

[12] SEIU cites two federal cases discussing whether a party obtained a commercial benefit or had a commercial interest or for purposes of certain sections of the federal Freedom of Information Act. *Nat'l Sec. Archive v. U.S. Dep't of Def.*, 530 F. Supp. 2d 198, 203 (D.D.C. 2008); *VoteHemp, Inc. v. Drug Enf't Admin.*, 237 F. Supp. 2d 55, 65 (D.D.C. 2002). However, these sections are not in any way similar to RCW 42.56.070(9) and therefore are not helpful. *See Francis v. Dep't of Corr.*, 178 Wn. App. 42, 58, 313 P.3d 457 (2013). Also unhelpful are cases SEIU cites interpreting the Lanham Act, 15 U.S.C. § 1051 et seq., which is the primary federal law regulating federal trademarks. *See Jews for Jesus v. Brodsky*, 993 F. Supp. 282, 307 (D.N.J 1998); *Brach Van Houten Holding, Inc. v. Save Brach's Coal. for Chi.*, 856 F. Supp. 472, 474 (N.D. Ill. 1994).

The PRA generally prohibits an agency from inquiring about the purpose of a records request, but it provides an express exception for RCW 42.56.070(9). RCW 42.56.080 states:

> Agencies shall not distinguish among persons requesting records, and such persons shall not be required to provide information as to the purpose for the request *except to establish whether inspection and copying would violate RCW 42.56.070(9)* or other statute which exempts or prohibits disclosure of specific information or records to certain persons.

(Emphasis added.) This statute clearly implies that a government agency can require a requesting party to provide information about whether a list of individuals is being requested for commercial purposes.[13]

The PRA offers no guidance regarding when an agency must investigate further and the level of such investigation before disclosing a list of individuals. We hold that the agency must investigate when it has some indication that the list might be used for commercial purposes. Whether an agency must investigate will depend on a case-by-case determination based on the identity of the requester, the nature of the records requested, and any other information available to the agency.

DSHS suggests that if an agency has an obligation to investigate, an affirmation from the requesting party that the intended use of the list is not for commercial purposes is sufficient. The problem with such an affirmation is that it allows the requesting party to control whether a list of individuals will be released without any independent inquiry by the agency. Therefore, merely

---

[13] DSHS cites to two cases where this court and others have constrained an agency's examination of a PRA request to the four corners of the document. *See, e.g.*, *Bainbridge Island*, 172 Wn.2d at 414; *Koenig v. City of Des Moines*, 158 Wn.2d 173, 183-84, 142 P.3d 162 (2006). However, neither case involved a request for a list of individuals that potentially implicated RCW 42.56.070(9) or application of RCW 42.56.080.

requiring an affirmation from the requesting party is not sufficient to satisfy an agency's obligation to investigate under RCW 42.56.070(9). When under the specific case facts an agency has an obligation to investigate, it must at least require a party requesting a list of individuals to state the purpose of the request. Such a requirement is permissible under RCW 42.56.080, and it would allow the agency to independently evaluate whether the requesting party's purpose is a commercial one.

5. Application of RCW 42.56.070(9) to Foundation Request

The question here is whether the purpose of the Foundation's request for the lists of individual providers is commercial – to generate revenue or financial benefit from the direct use of the lists. We hold that the Foundation's request is not for commercial purposes.

As discussed above, the Foundation's stated purpose in requesting the lists is to correspond with the individual providers and notify them of their constitutional right to refrain from union membership and fee payments. Notifying individuals of their constitutional rights does not directly involve the generation of revenue or financial benefit. As the trial court noted, this purpose appears to be political rather than commercial.

In addition, through the Nelson declarations the Foundation expressly disavowed any intent to use the list of individual providers to directly generate revenue. According to Nelson, the Foundation will not (1) attempt to solicit money or financial support from the individual providers, (2) attempt to make individual providers aware of business commercial entities in their area, or (3) supply the names of individual providers to any business, third party individual, or any other entity. In addition, the Foundation set up a separate website to provide information

25

to individual providers that does not contain a link to the Foundation's website (which apparently solicits donations).

However, SEIU argues that the Foundation would benefit from direct use of the list – contacting the individual providers – in several ways. First, SEIU argues that the Foundation's actions will economically injure SEIU, including by decreasing SEIU's membership and funds. SEIU suggests that this use constitutes a commercial purpose because the Foundation perceives SEIU as an "economic competitor."

Economically injuring SEIU would not directly generate revenue or financial benefit for the Foundation. Even if SEIU ceases to exist there will be no direct financial benefit to the Foundation. Therefore, economically injuring SEIU does not fall within the definition of "commercial purposes" that we adopt above. We decline to hold under the facts of this case that a nonprofit entity decreasing the revenue of another nonprofit entity is a type of commercial purpose under RCW 42.56.070(9).

Second, SEIU argues that the Foundation's actions will increase the Foundation's membership and funds. However, SEIU does not explain how contacting the individual providers would directly increase membership or donations. The Foundation emphasizes that it will not solicit donations from the individual providers. There also is no indication that the Foundation will ask individual providers to become Foundation members.

SEIU argues that the Foundation fundraises by broadly publicizing its goal to defund SEIU and therefore attacking SEIU may generate donations. However, SEIU does not explain how merely obtaining the lists and contacting the individual providers will cause others to join

the Foundation or donate money to the Foundation. Any such a benefit is too attenuated to constitute a commercial purpose.

Third, SEIU argues that the Foundation's actions will assist the "commercial businesses with which it is associated." Br. of Appellant at 21. However, SEIU does not explain how contacting the individual providers would assist other commercial businesses or identify those businesses. And the Foundation states that it does not promote specific for-profit businesses in any particular industry.

Fourth, SEIU argues that the Foundation's actions will "bring credit or attention to its own extreme political views." Br. of Appellant at 21. However, SEIU does not explain how bringing attention to the Foundation's political views will provide the Foundation with some direct financial benefit. SEIU may be arguing that informing the individual providers of their political views will cause the individual providers or others to join the Foundation or donate money to the Foundation. But such a benefit is too attenuated to constitute a commercial purpose.

Accordingly, we hold that RCW 42.56.070(9) does not preclude the disclosure of the lists of individual providers that the Foundation requested.[14] A party must prove the existence of a PRA exemption to obtain a PRA injunction under RCW 42.56.540. *Ameriquest II*, 177 Wn.2d at 487. Therefore, SEIU is not entitled to injunctive relief under RCW 42.56.540 on this basis.

---

[14] Our holding is expressly based on the Foundation's repeated representations that it will not (1) attempt to solicit money or financial support from the individual providers, (2) attempt to make individual providers aware of business commercial entities in their area, or (3) supply the names of individual providers to any business, third party individual, or any other entity.

E.      RCW 42.56.230(1) – RECORDS IDENTIFYING WELFARE RECIPIENTS

SEIU argues that RCW 42.56.230(1) exempts the lists of individual providers from release because the release of the list would allow the Foundation to discover the names of Medicaid beneficiaries who receive care from the individual providers. We disagree that this exemption applies here.

1.    Statutory Language

RCW 42.56.230 states:

The following personal information is exempt from public inspection and copying under this chapter:

(1) Personal information in any files maintained for students in public schools, patients or clients of public institutions or public health agencies, or welfare recipients.

The parties appear to agree that the Medicaid beneficiaries who receive care from the individual providers are "welfare recipients" under RCW 42.56.230(1).

Under the plain language of RCW 42.56.230(1), this exemption is inapplicable to the lists of individual providers. The exemption applies only to personal information in any files maintained for welfare recipients. SEIU does not contend that the lists of medical providers were in any such files.

2.    Extension of RCW 42.56.230(1)

SEIU argues that RCW 42.56.230(1) should apply here because disclosure of the name of individual providers is "tantamount to the release of the identities of Medicaid beneficiaries." Br. of Appellant at 34. SEIU claims that because a significant number of individual providers reside in the homes of Medicaid beneficiaries, revealing the identities of those individual providers could effectively reveal the identities of those beneficiaries.

The Supreme Court rejected a similar argument in *Koenig v. City of Des Moines*, 158 Wn.2d 173, 142 P.3d 162 (2006). *Koenig* involved former RCW 42.17.31901(1992), which exempted from disclosure the name and other specifically defined information identifying child victims of sexual assault. *Id*. at 181. The father of a child victim of sexual assault submitted a PRA request to the city, requesting all records concerning his daughter. *Id*. at 178. The trial court redacted the victim's name, address, and relationship to the assailant, and ordered the release of the redacted records. *Id*. at 178-79. The city argued on appeal that if it released the records in response to a request identifying a minor by name, the very act of disclosure would identify the minor as a child victim of sexual assault. *Id*. at 181.

The court focused on the plain statutory language, which prohibited the disclosure of *information* revealing the identity of child victims of sexual assault. *Id*. at 182. The court stated that "[b]y its plain language, this provision excludes from disclosure only the information falling within one of the enumerated categories, and not entire records." *Id*. Because the records themselves (after redaction) did not contain any identifying information regarding Koenig's daughter, the exemption was inapplicable. *Id*. at 182-83. The court emphasized that there was no authority for the notion that it could look beyond the four corners of the records at issue to determine whether they were properly withheld. *Id*. at 183.

Similarly, Division One of this court rejected this type of argument in *King County v. Sheehan*, 114 Wn. App. 325, 57 P.3d 307 (2002). In *Sheehan*, a PRA request was submitted to local police agencies asking for a list of the names of law enforcement officers. *Id*. at 332. King County argued that although the names themselves were not subject to a PRA exemption,

releasing the list of names could allow someone to track down their home addresses and other personal, nondisclosable information from other sources. *Id*. at 344-45.

The court rejected what it characterized as a "linkage" argument – "that any information, no matter how public it may be, is nondisclosable if it could somehow lead to other, private information being tracked down from other sources." *Id*. at 345-46. The court stated:

> It is a fact of modern life in this age of technology that names can be used to obtain other personal information from various sources, but we conclude that this is not sufficient to prevent disclosure of the names of police officers under the act.

*Id*. at 346.

The holdings in *Koenig* and *Sheehan* control here. As noted above, RCW 42.56.230(1) does not apply to the lists of individual providers. The fact that releasing the names of individual providers may effectively release the names of Medicaid beneficiaries, as in *Koenig*, or allow the requestor to discover the names of Medicaid beneficiaries through investigation, as in *Sheehan*, does not allow us to ignore the plain language of RCW 42.56.230(1).

SEIU acknowledges the holdings in *Koenig* and *Sheehan*, but argues that we should reject those cases. SEIU argues that *Sheehan* did not rule that a linkage analysis was intrinsically illegitimate, and that both *Koenig* and *Sheehan* were issued prior to the current technological age. Even if we found these arguments persuasive, SEIU cites to no Washington case law or statute that would permit us to construe RCW 42.56.230(1) to encompass a situation that is not reflected in the plain language of the statute.[15] Therefore, we refrain from adopting SEIU's construction.

---

[15] SEIU also relies on *Tacoma Pub. Library v. Woessner*, where this court ruled that release of employee identification numbers would be an invasion of privacy because those numbers would allow the requestor to determine exempt personal information regarding the employees. 90 Wn. App. 205, 221-222, 951 P.2d 357 (1998). There the court was examining whether the disclosure of the requested information would violate an employee's right to privacy, and was required to

We hold that RCW 42.56.230(1) does not exempt the disclosure of the lists of individual providers that the Foundation requested. A party must prove the existence of a PRA exemption to obtain a PRA injunction under RCW 42.56.540. *Ameriquest II*, 177 Wn.2d at 487. Therefore, SEIU was not entitled to a preliminary or permanent injunction under RCW 42.56.540 on this basis.

F.     ATTORNEY FEES FOR TRO

The Foundation argues that it is entitled to reasonable attorney fees under equitable principles because it was successful in dissolving the trial court's TRO. We do not award the Foundation reasonable attorney fees.

We may award attorney fees to a party that prevails in dissolving a wrongfully issued injunction or temporary restraining order. *Burt v. Dep't of Corr.*, 191 Wn. App. 194, 205, 361 P.3d 283 (2015). However, this award is discretionary. *Confederated Tribes of Chehalis Reservation v. Johnson*, 135 Wn.2d 734, 758, 958 P.2d 260 (1998). "The purpose of the rule permitting recovery for dissolving a restraining order is to deter plaintiffs from seeking relief prior to a trial on the merits. The purpose of the rule would not be served where injunctive relief prior to trial is necessary to preserve a party's rights pending resolution of the action." *Id.* at 758 (internal citations omitted).

Here, a trial on the merits would also have been fruitless had the trial court lifted the TRO. Accordingly, we deny the Foundation's request for reasonable attorney fees.

---

determine whether such disclosure would be highly offensive. *Id.* at 216-222. Neither situation is present in this case.

We affirm the trial court's denial of SEIU's request for preliminary and permanent injunctive relief.

_____
MAXA, A.C.J.


We concur:

_____
MELNICK, J.

_____
SUTTON, J.