## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| HIRED HANDS, LLC, and KENNETH SMITH, | No. 53450-9-II |
| Appellants, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Respondent. | |

MELNICK, J. — Hired Hands, LLC and Kenneth Smith (hereafter Hired Hands) appeal the superior court's order that upheld the constitutionality of WAC 296-46B-940. This regulation requires electricians to wear a wallet-sized badge showing they are certified to perform electrical work. Hired Hands challenges the regulation on three constitutional grounds. First, it argues that the badge requirement violates its First Amendment right against compelled speech. Hired Hands next argues it violates the fundamental right to choose physical appearance. Lastly, it argues that the regulation is void for vagueness.

We affirm.

### FACTS

Hired Hands sought a declaratory judgment in the Thurston County Superior Court seeking to have WAC 296-46B-940 declared unconstitutional on its face. This regulation requires electricians to wear a wallet-sized badge while working.

Electricians in Washington are regulated in a several ways. Ch. 19.28 RCW. Individual electricians must acquire licenses and certificates of competency. RCW 19.28.041; RCW 19.28.161. The certificates have four levels: master journey level, journey level, master specialty, and specialty electrician. RCW 19.28.161(1). The various levels are based on experience with different types of work, and each level has specific hands-on requirements. RCW 19.28.191.

In 2009, the legislature conducted fact finding to understand the issue of contractors using unlicensed electricians to perform electrical work. SUBSTITUTE H.B. 1055, 61ST Leg., Reg. Sess. (Wash. 2009). Testimony revealed that some contractors did in fact utilize unlicensed electricians to perform electrical work. SUBSTITUTE H.B. 1055. Additionally, individual unlicensed electricians have deceived consumers and contractors by using certificates from people with the same name. SUBSTITUTE H.B. 1055.

The legislature determined these anticompetitive practices contributed to consumer deception and could lead to unsafe electrical installations. SUBSTITUTE H.B. 1055 §1. Pursuant to those findings, the legislature amended RCW 19.28.271 to give the Department of Labor and Industries (L&I) the power to require electricians to wear a visible certification badge. SUBSTITUTE H.B. 1055 §1; RCW 19.28.271(1).

In 2012, L&I adopted WAC 296-46B-940 which required electricians to wear a wallet-sized badge while working. The badge must contain the electrician's city and state of residence, and the person's level of electrical certification. The badge must be worn on the outside of clothing, except "when working in an attic or crawl space or when operating equipment . . . where

wearing the certificate may pose an unsafe condition for the individual." WAC 296-46B-940(3)(e). Additionally, as appropriate, the badge may be worn under protective clothing "e.g., rain gear when outside in the rain, arc flash, welding gear, etc." WAC 296-46B-940(3)(e). Cold weather jackets "or similar" clothing are excluded from the protective gear definition. WAC 296-46B-940(3)(e).

In 2017, Hired Hands filed a declaratory judgment action challenging the constitutionality of WAC 296-46B-940. Hired Hands also filed an opening brief. First, Hired Hands argued strict scrutiny should apply because the regulation compelled protected speech in violation of the First Amendment to the Constitution. Second, Hired Hands argued strict scrutiny should apply because the regulation violated the fundamental right to choose personal appearance by forcing electricians to wear the badge. Lastly, Hired Hands argued the "etc." and "similar" language in WAC 296-46B-940(3)(e) rendered the statute unconstitutionally vague. L&I argued that a rational basis test should be used for the first two arguments and that the court should uphold the regulation. In addition, it argued that the regulation was not vague.

At a hearing, the court asked Hired Hands whether the central issue requiring strict scrutiny was Hired Hands' bodily integrity argument, rather than its First Amendment challenge. Report of Proceedings (RP) at 12. Hired Hands conceded that strict scrutiny was appropriate only because the badge must be worn, not because of the specific content of the badge. Hired Hands also stated that the badge would be constitutional if it were affixed to an electrician's toolbox or car, but that it was a "huge step" to require the badge be worn on the electrician's person. RP at 12.

The court utilized a rational basis test to evaluate the badge requirement and it upheld the regulation. Hired Hands appeals.

ANALYSIS

I.      STANDARD OF REVIEW

Hired Hands challenges the constitutionality of a Washington administrative rule. Constitutional challenges are issues of law. *Lenander v. Dep't of Ret. Sys.*, 186 Wn.2d 393, 403, 377 P.3d 199 (2016). We review such challenges de novo. *Lenander*, 186 Wn.2d at 403. In reviewing a rule, we shall declare it invalid if it is unconstitutional, if it exceeds the statutory authority of the agency, if its adoption violated rule-making procedures, or if it is arbitrary and capricious. *Hillis v. Dept. of Ecology*, 131 Wn.2d 373, 382, 932 P.2d 139 (1997).

II.     FIRST AMENDMENT ISSUES

The parties disagree on what test we should utilize to decide the first two issues raised by Hired Hands. Hired Hands argues we should use strict scrutiny because the badge requirement compels electricians to convey a content based, ideological message of the state.[1] L&I argues that a rational basis test applies because the badge requirement is a reasonable regulation of professional conduct that only incidentally impacts speech. We agree with L&I.

Strict scrutiny requires the government to prove a challenged restriction furthers a compelling state interest and is narrowly tailored to achieve that interest. *Reed v. Town of Gilbert*, 576 U.S. 155, 171, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015). Strict Scrutiny is the highest standard available, and few statutes survive under this level of analysis. *Reed*, 576 U.S. at 180.

On the other hand, the rational basis test is a deferential standard that presumes a statute is valid. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). Under rational basis, a statute is constitutional if it rationally relates to any legitimate state interest. *Cleburne Living Ctr.*, 473 U.S. at 440.

---

[1] This argument seems to contradict the position Hired Hands asserted in the trial court.

We must first decide whether the badge requirement is a regulation of professional conduct or one of compelled speech. The outcome of that analysis determines what test we use.

We conclude that the badge requirement regulates professional conduct and only incidentally involves speech. This requirement is a component of a larger scheme that regulates electricians. Ch. 19.28 RCW; Ch. 296-46B WAC. The electrical profession in Washington is subject to extensive licensing and regulation. Ch. 19.28 RCW; Ch. 296-46B WAC. The badge requirement is a component of those licensing regulations. RCW 19.28.191; WAC 296-46B-940. The badge identifies the person as an electrician and it shows the electrician's certification level, which directly corresponds to the type of electrical work the electrician may perform. RCW 19.28.191. The badge discloses information that contractors or consumers need to determine whether an electrician is certified and whether an electrician can do the assigned work.

The badge requirement is not compelled speech. Hired Hands seems to argue that the badge requirement forces electrical workers to express a message they would not otherwise make. However, this argument fails because all electricians must obtain a certificate of competency issued by L&I. RCW 19.28.161(1). By performing electrical work, electricians are merely expressing that they have met L&I's certification requirements. The regulation at issue merely verifies that the electrician is compliant with the law, or, as the case may be, that the worker is not compliant with the law. The regulation's effects on speech are incidental.

This conclusion is in accord with *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992). In *Casey*, the state required physicians to provide factual disclosures about abortion to women seeking the procedure. 505 U.S. at 884. Because the practice of medicine is subject to licensing and regulation, and the disclosures directly related to the procedures practiced by the complaining physicians, the Court

held the disclosure was constitutional as a reasonable regulation of professional conduct that only incidentally impacts speech. *Casey*, 505 U.S. at 884. The state's interest was to ensure women seeking an abortion provided informed consent, and the required disclosure was reasonably related to that interest. *Casey*, 505 U.S. at 883-84.

Hired Hands' reliance on *National Institute of Family and Life Advocates v. Becerra*, ___ U.S. ___, 138 S. Ct. 2361 201 L. Ed. 2d 835 (2018), is misplaced and it does not affect *Casey*'s applicability. In *Becerra*, the Court invalidated a California law that required anti-abortion clinics and unlicensed covered facilities" to provide a government drafted notice onsite about other available options for "family planning services, . . . prenatal care, and abortion for eligible women." 138 S. Ct. at 2369. It also required that unlicensed clinics provide onsite and in all advertising materials a government drafted notice stating they were unlicensed. *Becerra*, 138 S. Ct. at 2370. The state required the notices be in large font and in up to thirteen different languages. *Becerra*, 138 S. Ct. at 2378. The Court held that the California law did not regulate professional conduct but that it did regulate "speech as speech." *Becerra*, 138 S. Ct. at 2374.

Here, WAC 296-46B-940 regulates professional conduct and not "speech as speech." For this reason, we utilize a rational basis test. We reject Hired Hands argument that we utilize strict scrutiny.

The rational basis test is used when states regulate professional conduct, even if the regulation incidentally impacts speech. *Casey*, 505 U.S. at 884. A statute or regulation is reasonable if it rationally relates to any legitimate state interest. *Cleburne Living Ctr.*, 473 U.S. at 440.

We have previously established that the badge requirement is a regulation of professional conduct directly related to an electrician's profession. The remaining step is to apply *Casey*'s rational basis test to determine if the regulation rationally relates to a legitimate state interest. We determine that it does.

The badge requirement rationally relates to the state's interest of preventing consumer deception and unsafe electrical work. It also relates to the L&I's mandate to "adopt reasonable rules in furtherance of safety to life and property." RCW 19.28.031(1). L&I adopted the regulation after the legislature conducted fact finding, which found that contractors utilize unlicensed electricians and individual unlicensed electricians used certificates from people with the same name. SUBSTITUTE H.B. 1055. The legislature determined these practices led to consumer deception and could contribute to unsafe electrical work. SUBSTITUTE H.B. 1055 § 1. Protecting the public is a legitimate state interest. The regulation helps prevent consumer deception and unsafe electrical work by helping contractors and consumers easily identify who is certified to conduct electrical work. The badge requirement is reasonable because it rationally relates to a legitimate state interest.

We conclude the badge requirement is constitutional because it is a reasonable regulation of professional conduct that only incidentally impacts speech.[2]

---

[2] Because of our conclusion, we do not address L&I's alternative argument that the regulation does not violate the First Amendment because it requires factual, uncontroversial disclosure of commercial speech.

III.    PHYSICAL APPEARANCE

Hired Hands argues we should evaluate the badge requirement under strict scrutiny because it violates the fundamental right to choose physical appearance because the badge must be worn.[3] We disagree.

A right is fundamental when it is "objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997) (quoting *Moore v. City of East Cleveland*, 431 U.S. 494, 503, 97 S. Ct. 1932, 52 L. Ed. 2d 531 (1997), and *Palko v. Connecticut*, 302 U.S. 319, 325-36, 58 S. Ct. 149, 82 L. Ed. 288 (1937)). Fundamental rights that the Supreme Court has recognized involve deeply intimate personal choices including marriage, procreation, and abortion. *Glucksberg*, 521 U.S. at 726; *Kelley v. Johnson*, 425 U.S. 238, 244, 96 S. Ct. 1440, 47 L. Ed. 2d 708 (1976). No court has held that personal appearance is a fundamental right and Hired Hands has cited none.

Those cases that have examined personal appearance have applied a rational basis test. *Kelley*, 425 U.S. at 244. In *Kelley*, a police officer challenged a requirement that male officers keep their hair at a certain length. 425 U.S. at 239. In one sentence, the Court assumed some liberty interest existed in personal appearance, but it still applied a rational basis test. *Kelley* 425 U.S. at 244, 248. The Court emphasized that police, as government employees, are accorded fewer liberty protections than private citizens. *Kelley* 425 U.S. at 245. The Court upheld the constitutionality of the hair requirement because the state had a reasonable interest in requiring a uniform for police that included hair length. *Kelley* 425 U.S. at 247-48.

---

[3] Hired Hands uses the term "bodily integrity" but it really means physical appearance.

Other cases that have examined personal appearance challenges have also applied rational basis review, even when faced with race-based discrimination challenges. *See e.g. Hodge v. Lynd*, 88 F. Supp. 2d 1234, 1241-42 (D.N.M. 2000) (reviewing a number of state personal appearance cases, all of which applied rational basis); *Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1032 (11th Cir. 2016) (reviewing decisions holding hair styles are not a protected interest in workplace discrimination cases); *N.W. Enters. Inc. v. City of Houston*, 352 F.3d 162, 197 (5th Cir. 2003) (rejecting strict scrutiny and upholding a requirement that strip club staff wear visible identification badges), *abrogated on other grounds by Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, 352 F.3d 162 (2003). Personal appearance is subject to reasonable regulation and is evaluated under a rational basis standard. *Hodge*, 88 F. Supp. 2d at 1241-42.

Hired Hands argues that we should create a new fundamental right based on one sentence in *Kelley* and other inapplicable cases based on sexual battery. However, Hired Hands cites to no case that holds personal appearance alone is a fundamental right subject to strict scrutiny. All of the authority in personal appearance cases have applied rational basis, and we agree with this authority.

As analyzed above, the Washington badge requirement rationally relates to a legitimate state interest. It does not violate Hired Hands' right to personal appearance.

IV.     VOID FOR VAGUENESS CHALLENGE

Hired Hands argues the badge requirement is unconstitutional because the regulation is vague and does not provide fair notice of when the badge may be worn under clothing. We disagree.

A statute is vague if a person of ordinary intelligence would need to guess what a statute prohibits. *Johnson v. United States*, 576 U.S. 591, 612, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015); *City of Spokane v. Douglass*, 115 Wn.2d 171, 179, 795 P.2d 693 (1990). The standard requires more than "mere uncertainty." *Douglass*, 115 Wn.2d at 179.

To determine whether a regulation is vague, courts employ rules of statutory construction. The rules of statutory construction apply to agency created rules and regulations. *Odyssey Healthcare Operating B, LP v. Dep't of Health*, 145 Wn. App. 131, 141, 185 P.3d 652 (2008). The primary goal of statutory construction is to determine and give effect to the legislature's intent. *SEIU Healthcare 775 NW* (SEIU) v. *Dep't of Soc. & Health Servs.*, 193 Wn. App. 377, 398, 377 P.3d 214 (2016). To decipher legislative intent, courts examine the plain language of the statute, the context of the statute in which the provision is found, and related statutes. *SEIU*, 193 Wn. App. at 398. "When the statute at issue or a related statute includes an applicable statement of purpose, we interpret statutory language in a manner consistent with that stated purpose." *SEIU*, 193 Wn. App. at 398.

"To discern the plain meaning of undefined statutory language, we give words their usual and ordinary meaning and interpret them in the context of the statute in which they appear." *SEIU*, 193 Wn. App. at 399. Generally, "statutory exceptions are construed narrowly in order to give effect to the legislative intent underlying the general provisions." *Foster v. Dep't of Ecology*, 184 Wn.2d 465, 473, 362 P.3d 959 (2015).

Here, the regulation at issue expressly identifies the situations when the badge may be covered: "when working in an attic or crawl space or when operating equipment . . . where wearing the certificate may pose an unsafe condition for the individual." WAC 296-46B-940(3). Additionally, the regulation identifies when the badge may be worn beneath clothing: "rain gear

10

when outside in the rain, arc flash, welding gear, *etc.*," when such gear is required. WAC 296-46B-940(3)(e) (emphasis added). Cold weather jackets "or *similar*" clothing are excluded from the protective gear definition. WAC 296-46B-940(3)(e) (emphasis added).

Hired Hands argues the words "etc." and "similar" in the protective gear section mean other garments may qualify and that failing to list these other garments makes the regulation unconstitutionally vague. However, the context of the surrounding words in the regulation provide guidance on the meaning of "etc." and "similar."

The "etc." does mean that the badge may be worn under other, unlisted protective clothing. The "etc." is at the end of a string of expressly identified articles of protective gear. WAC 296-46B-940(3)(e). In this context, a person of ordinary intelligence would conclude the badge may only be worn under clothing designed to protect against specific harms (rain, high temperature, flame, etc.). "Similar" is used in the regulation in a section excluding cold weather jackets from the list of protective gear in WAC 296-46B-940(3). WAC 296-46B-940(3)(e). In this context, "similar" is intended to encompass other cold weather gear such as hats, gloves, wind breakers. The "similar" means that other clothing worn to protect against the cold do not qualify as protective gear. Outside of these situations, the badge may be covered only when working in an attic or crawl space. WAC 296-46B-940(3)(e). Evaluating the "etc." and "similar" within the context of the regulation shows WAC 296-46B-940 is not vague and provides fair notice of when the badge may be covered.

For these reasons, we conclude the badge regulation provides fair notice of when the badge may be worn under clothing. It is not vague.

ATTORNEY FEES

Hired Hands has requested costs and attorney's fees as a prevailing party pursuant to RCW 4.84.010 and RCW 4.84.350. Because Hired Hands is not a prevailing party, it is not entitled to costs or fees.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, P.J.

_____
Cruser, J.